# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | | |
|---|---|---|
| JOHN LEE LAYTON, | ) | 3:10-cv-00443-LRH-WGC |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| ROBERT BRUCE BANNISTER, | ) | |
| Defendant. | ) | |

Currently before the court are two motions filed by Plaintiff John Lee Layton. The first to be addressed will be Layton's Motion for Court to Take Judicial Notice. (Doc. # 53.)[1] Defendant Robert Bruce Bannister opposed (Doc. # 57), and no reply brief has been filed. The second is Layton's Motion to Extend Time (Doc. # 58), which is unopposed. After a thorough review, Layton's Motion for Court to Take Judicial Notice is denied and Layton's Motion for Extension of Time is granted.

## I. BACKGROUND

Layton, a *pro se* litigant, is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). (Pl.'s First Am. Compl. (Doc. # 29) at 5.) The events giving rise to this litigation took place while Layton was housed at the Northern Nevada Correctional Center ("NNCC") in Carson City. (*Id*.) Defendant is the Medical Director of the NDOC.

Layton filed an Eighth Amendment civil rights claim pursuant to 42 U.S.C. section 1983, in which he alleged that Defendant acted with deliberate indifference to his serious medical need. (*Id*. at 3.)

---

[1] Refers to the court's docket number.

1  Layton contended Defendant (and other medical personnel) violated his constitutional rights by
2  repeatedly denying him cataract removal surgery for a cataract in his right eye pursuant to NDOC's "one
3  good eye" policy. (*Id.*)

4  Defendant then filed a Motion for Summary Judgment contending Defendant did not act with
5  deliberate indifference. (Doc. # 43) Defendant admitted to the surgery denials, but asserted the denials
6  were based on medical information collected from various examinations. (*Id*. at 12-13.) Defendant
7  argued this information showed Layton was a premature candidate for cataract removal surgery because
8  his *overall* visual acuity still enabled him to perform the required tasks of daily living in the prison. (*Id.*
9  at 13.)

10  On September 25, 2012, this court issued a Report and Recommendation concluding that
11  Defendant's motion should be granted because the facts demonstrated there was no deliberate
12  indifference toward Layton's medical needs, even assuming they were "serious." (Doc. # 55.) The court
13  found Defendant's decisions to deny cataract removal surgery "constituted a difference of opinion and
14  were not medically unacceptable under all of the circumstances, which include Layton's ability to
15  perform daily tasks and the absence of any conclusive evidence that Layton's condition called for
16  'immediate,' 'emergency,' or 'urgent' surgery." (*Id.* at 15.)

## II. DISCUSSION

**A. Judicial Notice**

Layton requests the court to take "judicial notice" of certain new information. (Doc. # 53.) Layton claims that on September 19, 2012, he had an eye examination with a newly-hired optometrist at NNCC, Dr. Gelistad. (*Id.* at 2.) At this examination, Layton alleges Dr. Gelistad told him that he, Dr. Gelistad, "was going to refer plaintiff's case to the [Utilization Review Panel] for cataract removal surgery . . . based . . . on the severity of the cataract growth in [Layton's] right eye." (*Id*.)

First, the alleged facts Layton presents are not "facts" of which the court may take judicial notice. Rule 201 of the Federal Rules of Evidence ("FRE") governs the kinds of facts of which the court may take judicial notice. "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately

and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b).

Here, Layton refers to an alleged statement made by Dr. Gelistad regarding the severity of the cataract in his right eye, and the related need for cataract removal surgery. This factual allegation does not fit within the scope of FRE 201(b); it is neither generally known nor can it be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Layton himself is an interested party in this action, so his representations must be viewed through that adversarial prism. Further, Layton provides no verified document either from himself or Dr. Gelistad containing sworn statements, or even any medical records, that would support the allegations he presents here.

Second, even if the new factual allegations Layton presents are true, they shed no new light on his deliberate indifference claim. This court recommended granting summary judgment in Defendant's favor because Layton's *overall* visual acuity and his ability to perform the required tasks of daily living would not substantiate any claim of deliberate indifference. (Doc. # 55 at 15.) Specifically, in addition to the difference of opinion rationale noted above, the court concluded "Layton's medical records belie any claim that Defendant's denials . . . constituted a knowing disregard of an excessive risk to Layton's health or safety." (*Id.* at 13) (Citation omitted.) The court reached this conclusion by reviewing Layton's medical records and finding that his *left* eye's visual acuity was sufficiently high to render his *overall* visual acuity good enough not to warrant surgery in his right eye. (*Id.* at 12-13.)

The "new evidence" Layton presents exclusively pertains to his *right* eye's visual acuity, or more accurately, the lack thereof. This evidence would not change the court's original analysis because that analysis presumed blindness or near blindness in Layton's right eye, and the court nonetheless concluded Defendant did not act with deliberate indifference when Defendant denied Layton's request for cataract surgery. (*Id.* at 12.)

Furthermore, Layton claims to present this evidence to rebut Defendant's representation that "[t]he medical record does not indicate any recommendation for immediate surgery on Layton's right eye . . . ." (Doc. # 43 at 6.) Layton is correct that, if true, this new evidence about Dr. Gelistad's surgery referral would rebut Defendant's statement. However, that rebuttal would not assist Layton with respect

3

to his *pending* action, which evaluated the claims based on the facts available to Defendant when he (Dr. Bannister) made the decision to deny surgery. In an analysis of deliberate indifference to a serious medical need, such facts are relevant only to the "serious medical need" aspect of the claim. *See McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *rev'd on other grounds by WMX Tech., Inc. v. Miller*, 104 F.3d. 1133 (9th Cir. 1997) (giving examples of conditions that are "serious" in nature, including "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment . . . ."). The court found in Layton's favor on that issue. (*See* Doc. # 55 at 9.)

Accordingly, Layton's Motion for Court to Take Judicial Notice (Doc. # 53) is denied.

**B. Motion to Extend Time**

Finally, the court addresses Layton's Motion to Extend Time (Doc. # 58). As mentioned above, Defendant has not opposed. Layton seeks an extension of time to file an objection to the Court's Report and Recommendation (Doc. # 55). Upon review, the court grants Layton's motion (Doc. # 58).

### III. CONCLUSION

Based on the foregoing, Layton's Motion for Court to Take Judicial Notice (Doc. # 53) is **DENIED** and Layton's Motion to Extend Time (Doc. # 58) is **GRANTED**. Layton shall have until **Monday, November 26, 2012**, to file any objection to the Report and Recommendation.

DATED: November 5, 2012.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE